**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ONYX CAPITAL ADVISORS, LLC,
ROY DIXON, JR. and MICHAEL A. FARR,

    Defendants.
    _____/

Case No. 10-11633

HONORABLE DENISE PAGE HOOD

## ORDER REGARDING DISGORGEMENT, PREJUDGMENT INTEREST AND CIVIL PENALTY AGAINST DEFENDANTS

**I.    BACKGROUND**

Plaintiff United States Securities and Exchange Commission ("Commission") moves the Court to issue an order setting the amount of disgorgement and prejudgment interest and civil penalty to be paid by Michael A. Farr ("Farr") pursuant to the Court's January 29, 2013 Order (Doc. No. 127) and February 8, 2013 Judgment entered against Farr (Doc. No. 130).

On April 22, 2010, Plaintiff United States Security and Exchange Commission ("SEC") filed a Complaint against Defendants Onyx Capital Advisors, LLC ("Onyx Capital"), Roy Dixon, Jr. ("Dixon") and Michael A. Farr ("Farr") (collectively "Defendants") alleging eight counts of violating the Securities Act. Dixon is the owner and founding member of Onyx Capital, a private equity firm based in Detroit, Michigan. Dixon is a licensed securities broker and has been employed as a registered representative at a broker-dealer based in Bloomfield Hills, Michigan. Dixon also owns an insurance business named Onyx Financial Group, LLC, located in Detroit, Michigan, as well as numerous rental properties in Detroit and Pontiac, Michigan. (Comp., ¶ 9) Onyx Capital

managed assets for three Detroit-area public pension funds through its position as the general partner for the Onyx Capital Advisory Fund I, LP ("Onyx Fund"), a private equity fund. (Comp., ¶ 10) Farr is the President, Chief Executive Officer and sole owner of Second Chance Motors, Inc. and also controls the operations of two related companies, SCM Credit, LLC and SCM Finance, LLC, both of which provide financing support to Second Chance. (Comp., ¶ 11)

On February 8, 2013, the Court entered a Judgement against Farr. Farr consented to such entry and waived any right to appeal. (Doc. No. 130, p. 1) The Judgment ordered Farr to pay disgorgement and prejudgment interest and that the Court would determine any civil penalty. (Doc. No. 130, p. 1) The Judgment noted that upon filing of a motion for disgorgement and/or civil penalties, Farr is precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint, that Farr may not challenge the validity of the Consent or Judgment entered, and that the Court may determine the issues of disgorgement and penalty based on affidavits, declarations, sworn deposition and documentary evidence submitted by the Commission. (Doc. No. 130, p. 2) The Commission has now filed such a motion, with declarations and other documents submitted to support the motion. Farr had 45 days to respond to any brief filed by the Commission as to the amount of disgorgement and whether civil penalty should be imposed. (Doc. No. 127) The instant motion was filed on March 15, 2013 and initially set for a hearing on April 23, 2013.

On April 24, 2013, a Notice of Appearance by Attorney Rodd Walton was filed on behalf of Farr. The disgorgement hearing date was rescheduled to May 29, 2013. The day before the hearing on May 28, 2013, Farr filed a Motion to Adjourn the hearing date. The hearing was held on May 29, 2013 with the Commission's counsel present and without Farr's counsel present. The Court entered an Order granting Farr's Motion to Adjourn the hearing date and the matter was

rescheduled for July 31, 2013. On July 1, 2013, Farr filed a document "Responsive Motion Regarding Disgorgement, Prejudgment Interest and Civil Penalty." (Doc. No. 143) The Commission filed a reply and a hearing was held on the matter on July 31, 2013.

The Commission also seeks to impose disgorgement and civil penalties against Dixon and Onyx Capital. On October 11, 2012, the Court entered an order granting the Commission's Motion for Summary Judgment against Dixon and Onyx Capital. (Doc. No. 117) The Commission submitted further support regarding the amount of damages sought against Dixon and Onyx Capital. (Doc. No. 125)

## II.     DAMAGES

### A.     Disgorgement

#### 1.     Standard

Disgorgement is an equitable remedy which removes ill-gotten gain by forcing surrender of profits. *United States v. Universal Servs. Mgmt. Inc.,* 191 F.3d 750, 760, 763 (6th Cir. 1999). The purpose of disgorgement is not to compensate the victims of fraud, but to deprive the wrongdoer of his ill-gotten gain. *Id.* at 763-64. Once the Commission has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement *without* inquiring whether, or to what extent, identifiable private parties have been damaged by fraud. *See SEC v. Blavin,* 760 F.2d 706, 713 (6th Cir. 1985).

#### 2.     Disgorgement Amount Sought against Farr

In his response brief, Farr argues that no amount of disgorgement or prejudgment interest is due in light of his undisputed cooperation with the Commission. However, Farr's Consent to enter into a judgment with the Commission expressly agreed to "disgorge all ill-gotten gains

3

received as a result of the conduct of the alleged Complaint, plus prejudgment interest thereon ..." (Farr Consent, Doc. No. 126-2, Pg ID 2407). Farr submitted the declaration of Eric W. Perdue analyzing Farr's financial records. Farr argues that based on Perdue's analysis, disgorgement should not be ordered. The Commission responds that its analysis is based on Farr's admissions that he withdrew from the pension funds' investment money to pay off his personal debts and to acquire real estate. (Farr Tr., Doc. No. 132-1) The Court finds no merit in Farr's argument that disgorgement is not appropriate in this case.

The Commission alleged in the Complaint that Farr assisted Dixon in misappropriating approximately $1.05 million from the Onyx Fund. (Comp., ¶ 60) The Complaint alleged Farr used approximately $229,000 of that money for his own benefit. (Comp., ¶ 62) The Commission has since learned that Farr used a significantly larger amount of the Onyx Fund's assets for his own purposes. The Commission seeks a minimum of $1,293,723, but not more than $2,326,930:

> $ 730,000 lump sum Farr withdraw in September 2007 from Onyx Fund
> 458,723 received from Sea Jay
> 105,000 received in violation of the asset freeze order
> _____
> $ 1,293,723

As to the $730,000 amount, the Commission asserts that Farr withdrew this money from an investment made by the Onyx Fund and used the money to pay a personal debt and to purchase a property in the name of Sea Jay, a company wholly owned by Farr and his wife. (Motion, Holland Decl., Ex. A, Farr Tr. at 73-84) The Commission claims that this amount benefitted Farr personally and deprived his businesses of the use of the Onyx Fund's investment money.

Regarding the $458,723 received from Sea Jay, the Commission states that Sea Jay's only source of revenue was the rent it received from renting the property that Farr improperly purchased

4

with the Onyx Fund's investment money. (2nd Holland Decl., Ex. B) The Commission asserts that Farr transferred $2,337,500 from his used car businesses to Sea Jay between June 2008 and November 2009. Farr returned $1,160100 to his used car companies, paid $521,976 to construction contractors for Dixon's benefit, and delivered $196,700 to Dixon in cash. (2nd Holland Dec., Ex. B) This resulted in a net transfer of $458,723 from Farr's used car businesses to Sea Jay. The Commission claims that any monies Farr received from Sea Jay are ill-gotten gains.

The Court entered a Preliminary Injunction Order and Asset Freeze on May 7, 2010 wherein Farr agreed not to use certain assets for personal expenses. Farr admitted at his deposition that he spent at least $105,000 on personal expenses in violation of the Court's asset freeze order. (Motion, Ex. A, Farr Tr. at 199-204) The Commission argues that these transfers were in violation of the Court's order and that Farr should not receive any financial benefit from such violation.

The Commission asserts that an additional $1,033,207 are also ill-gotten gains Farr received from his used car companies between June 2007 and December 2009 through hundreds of smaller withdrawals. (2nd Holland Decl., Ex. A) Farr's used car businesses received $15.7 million from the Onyx Fund over this time. The Commission claims that it is unlikely that Farr's businesses ever would have received that much money from the Onyx Fund if Farr had not been willing to cooperate in Dixon's misappropriations from the Onyx Fund. The Commission argues that the $1,033,207 total amount was not part of a salary or draw since the withdrawals were not made on a regular periodic basis and were not in regular amounts. The Commission claims that the amounts were withdrawn on an as needed basis in different amounts.

Adding the $1,033,207 to the $1,293,723, equals $2,326,930, the maximum amount requested by the Commission. The Court finds that the Commission sufficiently supported its

5

request for the maximum disgorgement amount of $2,326,930. Upon ordering the disgorgement in the maximum amount sought by the Commission of $2,326,930, the prejudgment interest would be $277,793 and any additional amount to the date of the award. (2nd Holland Decl. at ¶ 23)

### 3. Disgorgement Amount Sought as to Dixon and Onyx Capital

In its previous order granting the summary judgment motion, the Commission sought a judgment requiring Dixon and Onyx Capital to pay disgorgement in the amount of $3,112,343. The amount includes $2,063,543 that Dixon and Onyx Capital took in excess management fees and $1,048,800 Dixon misappropriated through Farr and Farr's companies, in addition to prejudgment interest as of the date of the award of disgorgement. As previously noted, the Court finds that the Commission properly supported its request for summary judgment on the merits and the request for disgorgement in the amount of $3,112,343 against Dixon and Onyx Capital, jointly and severally.

### B. Civil Penalty

In addition to disgorgement, the Commission seeks a civil penalty against all three Defendants. Farr's response is that because he cooperated with the Commission and based on Perdue's declaration, civil penalty should not be imposed against him. For the reasons set forth above, the Court finds no merit in Farr's argument that civil penalty is not appropriate in this case.

The Commission may seek civil penalties for the violation of federal securities laws under Section 20(d) of the Securities Act, Section 209(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act. *U.S. S.E.C. v. C.J.'s Financial,* 2012 WL 3600239 (E.D. Mich. 2012)(unpublished). The criteria for imposing a civil penalty is based upon the Court's discretion in light of the facts and circumstances of each case. *Id.* Courts look to the same factors when imposing civil penalties as in the issuance of a permanent injunction. *Id.* In *SEC v. Youmans,* 729

F.2d 413, 415 (6th Cir. 1984), the Sixth Circuit set forth a number of factors which courts are to consider when deciding to issue a permanent injunction: 1) the egregiousness of the violations; 2) the isolated or repeated nature of the violations; 3) the degree of scienter involved; 4) the sincerity of the defendant's assurances, if any, against future violations; 5) the defendant's recognition of the wrongful nature of his conduct; 6) the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations; and 7) the defendant's age and health.

The Adviser's Act provides for three tiers of penalties based upon the degree of a defendant's culpability. The first tier penalty is permitted for each violation of the law. The second tier is permitted for each violation of the law which involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement. The third tier is permitted if: 1) the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and 2) such a violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. 15 U.S.C. § 80b-9(e).

Based on the amounts involved and the monies having been defrauded from three pension funds, a civil penalty under the third tier is appropriate. Weighing the factors to be considered, the violations are egregious since these monies were taken from three pension funds. The violations were not isolated and were repeated. The degree of scienter involved was high, given the structure of the investments and various companies involved between Dixon and Farr.

As to Farr's assurances that there will be no future violations and recognition of the wrongful nature of his conduct, such can be inferred by Farr's agreement to the Consent Judgment. Regarding the likelihood that Farr's occupation will present opportunities (or lack thereof) for future violations, there may be such, given that he is an entrepreneur and owns his businesses. Farr is a young man

and there are no allegations he is not in good health.

The Commission does not seek a specific civil penalty amount as to Farr. Farr does not appear to be the leader in the fraud scheme at issue. However, in light of the amount at issue and the victims of the fraud, the Court finds that civil penalty must be imposed against Farr. The Commission identifies approximately $1,800,000 of funds accepted by Farr from the Onyx Fund and/or Dixon. Of that amount, it appears more than $500,000 were paid to contractors building Dixon's home and nearly $300,000 in cash to Dixon. The Commission asserts that Farr used more than $1,000,000 of the amount from the pension funds' investment money for his own benefit. The Court finds the $1,000,000 amount represents the gross amount of pecuniary gain as a result of Farr's violations. After weighing the factors noted above and noting Farr's cooperation in this matter, the Court finds a civil penalty in the amount of $1,000,000 against Farr is sufficient to serve as a deterrent to future conduct by Farr.

The Commission seeks civil penalties against Dixon and Onyx Capital, in joint and several liability, in the amount of $3,112,343. The Commission has supported this amount in its submissions. In addition to the findings above, Dixon, and his alter ego company, Onyx Capital, have litigated this matter and have not admitted to any wrongful conduct. Future violations by Dixon may be likely because he does not believe he has engaged in any wrongful conduct. Dixon is a man in his late forties to early fifties and there are no allegations that he has any health issues. Weighing the factors set forth above, the Court imposes a civil penalty against Dixon and Onyx Capital, jointly and severally, in the amount of $3,112,343.

**III. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for Order Setting Disgorgement, Prejudgment Interest and Civil Penalty Against Defendant Michael A. Farr (**Doc. No. 132**) is GRANTED.

IT IS FURTHER ORDERED that Defendant Michael A. Farr's Motion for Responsive Motion for Order/Judgment denying the request by Plaintiff for Disgorgement, Prejudgment Interest and Civil Penalty Against Defendant Farr (**Doc. No. 143**) is DENIED.

IT IS FURTHER ORDERED that Defendant Michael A. Farr is liable for the following:

> **Disgorgement:** $2,326,930.00;
> Prejudgment Interest on the disgorgement amount through the award date ($277,793.00 as of March 2013); and,
> **Civil Penalty:** $1,000.000.00.

IT IS FURTHER ORDERED that Defendants Roy A. Dixon and Onyx Capital Advisors, LLC are liable, jointly and severally, for the following:

> **Disgorgement:** $3,112,343.00;
> Prejudgment Interest through the award date on the disgorgement amount; and,
> **Civil Penalty:** $3,112,343.00.

IT IS FURTHER ORDERED that Defendants Roy A. Dixon and Onyx Capital Advisors, LLC are permanently enjoined from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 206(1), 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8.

IT IS FURTHER ORDERED that a separate Judgment in the amounts noted above will be entered by the Court.

                                        S/Denise Page Hood
                                        Denise Page Hood
                                        United States District Judge

Dated: January 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 31, 2014, by electronic and/or ordinary mail.

                                     S/LaShawn R. Saulsberry
                                     Case Manager